# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RANDY G. BICE,** | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3197 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner of** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| Defendant. | ) | |

Randy G. Bice (Bice) filed an application for disability benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq.*, in April 2006, alleging disability beginning March 24, 2006. The Social Security Administration (SSA) denied benefits initially and on reconsideration. An administrative law judge (ALJ) held a hearing on February 9, 2009. On February 26, 2009, the ALJ determined Bice was not disabled within the meaning of the Act from March 24, 2006, through the date of the decision. The Appeals Council denied Bice's request for review on July 17, 2009. Bice now seeks judicial review of the ALJ's determination as it represents the final decision of the Commissioner of the Social Security Administration.[1]

Bice filed a brief (Filing No. 20) and a reply brief (Filing No. 24) in support of this administrative appeal. The Commissioner filed the transcript of the administrative record (AR.) (Filing No. 14 - not available electronically) and a brief (Filing No. 23) in opposition to Bice's appeal for benefits. Bice appeals the ALJ's decision, asking the decision be reversed and benefits awarded because: (1) the ALJ failed to explain his consideration of material inconsistencies and ambiguities in the record evidence, as required by Social Security Ruling 96-8p (SSR 96-8p); and (2) the record lacks substantial evidence to support the ALJ's residual functional capacity (RFC) assessment and hypothetical question posed to the vocational expert. **See** Filing No. 20 - Brief p. 9. The court has reviewed the record, the ALJ's decision, the parties' briefs, the transcript, and applicable law, and finds

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). **See** Filing No. 17.

the ALJ's ruling that Bice is not disabled should be affirmed because it is supported by substantial evidence in the record.

## PROCEDURAL BACKGROUND

Bice applied for disability insurance benefits on April 4, 2006, pursuant to the Act (AR. 69, 70-72). Bice alleged an inability to engage in any substantial and gainful work activity as of March 24, 2006, due to back, leg, and neck pain (AR. 88). The SSA denied benefits initially (AR. 38-42) and on reconsideration (AR. 45-48). Upon Bice's request, on February 9, 2009, ALJ Christopher Larsen held a hearing and issued a decision on February 26, 2009 (AR. 55, 14-20). The ALJ determined Bice was not disabled, pursuant to 20 C.F.R. § 404.1520(g), from the period March 24, 2006, through the date of the decision, or eligible for disability benefits under the Act (AR. 20). The Appeals Council denied Bice's request for review on July 17, 2009 (AR. 6-9).

## FACTUAL BACKGROUND

### A.   Medical Records

Bice suffered a job related injury to his back in 1994, for which he underwent surgery (AR. 282). Initially, the pain was significantly reduced, but after many years the pain began to increase (AR. 282). Bice experienced upper extremity symptoms of burning, numbness, tingling, and difficulty holding onto objects (AR. 230). On September 28, 2004, Bice underwent cervical fusion (AR. 230). Bice returned to work two weeks after surgery (AR. 230).

On March 21, 2005, two weeks after sustaining an injury when he fell, Bice presented to Good Samaritan Health Systems (Good Samaritan) (AR. 230). Bice felt pain, which he rated at a level 4 out of 10, down his entire spine with pain in the rib cage (AR. 230). Bice reported that his extremities felt better since the 2004 surgery, but reported sleeping only three hours at a time (AR. 230). Bice was treated with physical therapy including massage and aquatic exercise (AR. 231).

In August 2005, Bice presented to the Mid-America Neurosurgery Clinic, P.C., with complaints of increased pain over the previous three months (AR. 214). His back pain was

radiating down his legs (AR. 214). On examination, Bice's lower back was minimally tender but neurologically intact (AR. 214). Magnetic resonance imaging (MRI) taken of the lumbar spine on September 1, 2005, revealed no evidence of disk herniation or bony stenosis at any level (AR. 228).

On October 11, 2005, Bice complained of continued back and leg pain and underwent a nerve conduction study (AR. 227; 321-323). The results of the study indicated mild damage to the left peroneal and tibial nerves in an axonal fashion, which was suspicious of toxic or metabolic peripheral neuropathy (AR. 227). On examination by Jan C. Weber, M.D. (Dr. Weber), with the Platte Valley Medical Group, P.C., Bice showed normal strength in his arms and legs with a decreased pin prick sensation to the mid-calf on the right leg and to the left ankle (AR. 322-323). Bice reported he was working sixty hours a week (AR. 322). Bice had a steady, but slightly broad-based gait, was slightly unsteady when tandem walking, and tended to fall backward during the Romberg balance test (AR. 322). Dr. Weber believed Bice's leg pain was caused by his back problems, but a subsequent thoracic spine MRI was unremarkable (AR. 212, 224-225, 290, 323). On November 2, 2005, treating physician David A. Benavides, M.D., spoke with Bice about the MRI and determined no surgical intervention was indicated (AR. 212).

On December 13, 2005, Bice presented to Arun Angelo Patil, M.D. (Dr. Patil), at the Nebraska Medical Center with low back pain and leg pain, which Bice said had progressively worsened over the last year (AR. 293). Bice reported burning sensations below the knee and increased pain when working on his feet (AR. 293). Dr. Patil referred Bice to neurologist Pariwat Thaisetthawatkul, M.D. (Dr. Thaisetthawatkul), at the Nebraska Medical Center, Neurology Clinic, for further evaluation of his back and leg pain (AR. 289-293). During an examination on December 20, 2005, Bice had normal muscle strength and muscle tone throughout (AR. 291). Bice also walked normally and could tandem and heel-and-toe walk without difficulty (AR. 291). Dr. Thaisetthawatkul thought Bice's pain could be from peripheral neuropathy (AR. 292). Bice reported his medications had provided relief, but did not work as well anymore (AR. 290). Bice was taking Darvocet, as needed, Lyrica and Cymbalta (AR. 290). Dr. Thaisetthawatkul increased Bice's

prescription Lyrica dosage and recommended Bice continue to take Cymbalta, soak his feet in cold water, use lotion, and wear good shoes (AR. 292).

On January 3, 2006, Bice went to the emergency room at Good Samaritan Hospital, reporting leg pain and numbness (AR. 222). Bice was taking Darvocet for the pain, which had gotten better (AR. 222). Bice reported burning pain over his right anterior thigh (AR. 222). Yvette M. Haeberle, M.D. (Dr. Haeberle), assessed Bice with "acute exacerbation of chronic low back injuries," noting Bice walked without difficulty, had intact muscle strength and sensation, but had a limited range of motion (AR. 222). Dr. Haeberle recommended Bice continue using his prescribed pain and sleep medications and referred Bice for an MRI the next day (AR. 222). The subsequent MRIs revealed a stable lumbar spine with no herniation or stenosis, and only mild degenerative changes in the lower thoracic spine with slight disk bulging at several levels (AR. 217, 219-20).

On January 16, 2006, Dr. Thaisetthawatkul conducted additional testing for Bice's pain (AR. 284). Bice's nerve conduction study, electrophysiological study, and Electromyography (EMG) came back normal (AR. 284). Dr. Thaisetthawatkul concluded the studies showed no evidence of peripheral neuropathy, a pinched nerve in the back, or radiculopathy that could be observed to explain Bice's symptoms (AR. 284). Dr. Thaisetthawatkul reported Bice had "pretty mild to moderate right carpal tunnel syndrome" (AR. 284).

On February 15, 2006, Bice went to the Nebraska Medical Center Pain Clinic (Pain Clinic) and reported low back and leg pain and chronic headaches (AR. 282-283). Bice reported to Laurel Kortum, M.D. (Dr. Kortum), that he had a history of neck and arm pain, but stated these had been "stable for the last couple years" (AR. 282). Dr. Kortum noted that after surgery Bice's "pain was significantly better, and he continued to work as he does now 40 to 60 hours a week" (AR. 282). On examination, Bice exhibited full strength in his arms and legs and was not in acute distress (AR. 283). Dr. Kortum assessed Bice with "chronic low back pain with failed back surgery syndrome" and recommended an epidural steroid injection, which was administered the same day by Chris Criscuolo, M.D. (Dr. Criscuolo), without complication (AR. 281, 283).

4

On February 23, 2006, Dr. Thaisetthawatkul attempted to perform a spinal tap on Bice, however it was not successful (AR. 279). Dr. Thaisetthawatkul noted Bice's other lab results all came back unremarkable and Dr. Thaisetthawatkul could not identify significant peripheral neuropathy, lumbosacral radiculopathy, or spinal cord or brain problems that would explain Bice's pain symptoms (AR. 279). Later spinal tap results provided no evidence of an inflammatory disease, infection, or malignancy that could cause Bice's symptoms (AR. 268). Dr. Thaisetthawatkul opined Bice's "diagnosis is likely to be chronic low back pain or failed back syndrome" (AR. 268). Dr. Thaisetthawatkul recommended Bice return to Dr. Criscuolo for further pain management, even though the steroid injection only helped Bice manage his pain for four days (AR. 279, 268, 269). On February 27, 2006, Bice reported to Dr. Criscuolo that his pain had returned and he had a good deal of pain radiating down his right side (AR. 269). Dr. Criscuolo referred Bice to Kenneth A. Follett, M.D. (Dr. Follett), for consideration of a spinal cord stimulator (AR. 269).

On March 6, 2006, Bice presented to Ann M. Young, A.P.R.N. (Nurse Young), at the Kearney Arthritis Institute PC, with complaints of pain in his neck, back, and legs (AR. 234). Although Bice complained of pain "everywhere," he appeared in no acute distress, had a normal gait and station, normal range of motion and strength throughout his arms and legs, and normal alignment in his spine (AR. 235-236). Bice reported the medications he used either did not work or had decreased in effectiveness (AR. 237). Bice stated he slept only one to two hours at night and by the end of the day he had to walk on the sides of his feet due to pain (AR. 234). However, Nurse Young recorded that Bice was working forty to sixty hours a week doing factory type work (AR. 234). Nurse Young prescribed Celebrex and increased Bice's Ambien prescription (AR. 237).

The next day, on March 7, 2006, Bice filled out an Employee Request for Family or Medical Leave form stating his request for leave from March 9, 2006, until May 1, 2006, due to "[his] own serious health condition that makes [him] unable to perform at least one of the essential functions of [his] job" (AR. 117). Also, on March 7, 2006, Dr. Thaisetthawatkul opined that Bice would be unable to perform one or more of the essential functions of his job as a tool bar maker because he would have some limitations for

standing and walking (AR. 119-120). Dr. Thaisetthawatkul did not specify the nature of the limitation. Bice had reported his job required him to stand and walk all day (AR. 125-126).

On March 9, 2006, Bice reported to the Platte Valley Medical Group, P.C., the office of his family physician, Scott L. Smith, M.D. (Dr. Smith), for a follow-up to his stress echo, which he passed without any problems (AR. 312). At that time, Bice reported his arm pain was "much relieved" (AR. 312). Also, on March 9, 2006, Bice completed a Pain Clinic Questionnaire in which he wrote that he had constant pain throughout his entire body (AR. 113-14). At that time, Bice reported his hobbies included hunting, fishing, camping, riding horses, and trapping (AR. 116).

On April 24, 2006, Bice completed a Daily Activities and Symptoms Report form in which he wrote he could still do laundry and wash dishes but could only rarely water his flowers due to pain (AR. 133). Bice also wrote he could no longer hunt, fish, camp, work, or travel (AR. 134, 136). Bice stated he could sit for one-half to one hour and stand only 10 to 15 minutes at a time due to pain (AR. 134). Bice rated his pain from 6 out of 10 on good days to 9 out of 10 on bad days, stating he has more bad days than good days (AR. 135). Specifically, he wrote the amount of pain varies day to day, but "most often 24 hours a day" (AR. 135). Bice described his symptoms as chronic back pain, loss of feeling and "bad pain" in legs and feet, with burning sensations from his waist to his feet (AR. 135). Bice stated his medication is not effective to relieve pain for very long and he has tried acupressure, hydro therapy, chiropractic treatments, and home exercises (AR. 136).

After an assessment of Bice by Dr. Follett on May 1, 2006, Dr. Follett's impression was Bice suffered "low back syndrome with bilateral radiculopathy" (AR. 265). Dr. Follett agreed with Dr. Criscuolo that Bice was a good candidate for spinal cord stimulation (AR. 266). After examination, psychologist Rex L. Schmidt agreed Bice was a good candidate for spinal cord stimulation surgery (AR. 261-264).

On June 5, 2006, state agency medical consultant Glen D. Knosp, M.D. (Dr. Knosp), completed a Physical Residual Functional Capacity Assessment form (AR. 244-251) in which he wrote that Bice could lift twenty pounds occasionally and ten pounds frequently, and sit, stand, or walk for a total of six hours in an eight-hour workday (AR. 245). He further opined that Bice could not climb ladders, ropes, and scaffolds, and that Bice could

only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (AR. 246). The form primarily consisted of statements with available check boxes, however Dr. Knosp also provided a one page narrative explanation of his opinion (AR. 244-251, 252). Dr. Knosp found Bice's allegations of pain "not fully credible" (AR. 252). While Dr. Knosp acknowledged Bice had multiple complaints of foot and leg pain, he found no objective findings to support Bice's allegations (AR. 252). Dr. Knosp noted Bice was working sixty hours each week as of October 11, 2005 (AR. 252). An exam of Bice's feet showed they were entirely normal (AR. 252). All MRIs of the cervical, thoracic, and lumbar spine were essentially negative with no evidence of spinal stenosis (AR. 252).

On June 7, 2006, Bice underwent surgical implantation of a spinal cord stimulator electrode on a trial basis (AR. 258). On June 12, 2006, Bice reported having "excellent pain relief from the spinal cord stimulator trial" (AR. 256). Bice also stated he had decreased his use of Hydrocodone and Lyrica, and his functional capacity and sleep had significantly improved (AR. 256). Bice further reported he was walking "upwards of three-quarters of a mile a day" and could stand and walk significantly better (AR. 256). Dr. Follett recommended Bice proceed with permanent placement of the stimulator (AR. 256). On June 28, 2006, Bice reported he suffered "no muscular pains, no joint swelling or stiffness," and he denied having any "numbness, tingling, or extremity weakness" (AR. 297).

On July 6, 2006, Bice underwent permanent placement of an epidural spinal cord stimulation electrode with a subcutaneous rechargeable dual channel neurostimulation pulse generator without complication (AR. 362). For follow-up to the surgery, Bice returned to the Pain Clinic on July 24, 2006 (AR. 360). Bice reported he was "doing well" and the "stimulator [was] working" (AR. 360). Specifically, his pain had "significantly improved," and he was walking two miles daily with improved sleep (AR. 360). Bice rated his pain as a 3 out of 10, stating he had decreased use of Darvocet for pain (AR. 360).

On August 28, 2006, Bice appeared to be "doing quite well" since placement of the spinal cord stimulator (AR. 358). Bice reported he no longer needed Darvocet for pain relief (AR. 358). However, Bice felt his lower extremity pain had improved by about 50% improvement and his right lower extremity was not quite as good as it could be (AR. 358). Guy Music, M.D. (Dr. Music), and Dr. Follett reprogrammed the stimulator and advised Bice

7

to continue taking Lyrica for pain, as needed, with a plan to decrease medication use (AR. 358-359). Dr. Music scheduled Bice for a six-month check-up (AR. 359).

On November 7, 2006, Bice went to the Pain Clinic for back and leg pain (AR. 357). Bice reported he had been working as a truck driver during the harvest and "that this may be the source of his increased pain" (AR. 357). Bice sought to adjust the stimulator because he felt the stimulator was working on his left side, but relieved pain only down to his thigh on the right side (AR. 357). The pain had increased over the last couple weeks (AR. 357). On examination, Bice exhibited full strength in his legs (AR. 357). Tyrus Soares, M.D. (Dr. Soares), had the stimulator reprogrammed and recommended a follow-up appointment for four to six months (AR. 357). Bice reported that in November of 2006, he had increased pain and numbness and could not sit, stand, or walk very far (AR. 152). He wrote he needed someone to help him with shopping, washing, and paying bills because he could not ride in a car or drive for very long at a time (AR. 155).

On March 27, 2007, Dr. Soares saw Bice who complained of increasing pain similar to the pain he had experienced prior to implementation of the spinal cord stimulator (AR. 355). The pain was worse on the right side and he had increasing weakness in the right lower extremity (AR. 355). Overall, Bice felt he received 40% pain relief (AR. 355). Bice reported swelling and muscle spasms (AR. 355). Dr. Soares had the stimulator reprogrammed and determined testing was necessary to evaluate replacement of the stimulator (AR. 355). On March 28, 2007, after reprogramming the stimulator, Bice was able to achieve adequate stimulation into his right lower extremity (AR. 354). When Bice inquired about work restrictions, Dr. Soares advised he would not provide work restrictions, but from a surgical standpoint Bice "should be able to return to his normal activities as he is well healed" (AR. 354).

Dr. Smith referred Bice to Good Samaritan for a Physical Performance Evaluation to assess his ability to work (AR. 332). Bruce Albrecht, an Occupational Therapist and Certified Work Capacity Evaluator, conducted Bice's evaluation on April 18, 2007 (AR. 332). Mr. Albrecht concluded that "Bice demonstrated the physical ability necessary to perform the following mobility tasks for an occasional basis: sitting, standing, walking, crouching, stair climbing, low level ladder climbing no higher than 2 ft, overhead reaching

and forward reaching" (AR. 332). Mr. Albrecht defined occasional as "equal to 0-33% of workday or 0-32 repetitions per workday" (AR. 332). Additionally, Mr. Albrecht wrote that Bice demonstrated the ability to lift and carry twenty pounds on an occasional basis (AR. 332). Because Bice failed an upper level balance test, Mr. Albrecht opined "Bice should . . . avoid work on slippery, wet, narrow, elevated or erratically moving surfaces" (AR. 333). Mr. Albrecht noted Bice had driven himself to the appointment, which was approximately forty-five minutes, without stopping due to pain (AR. 336). Bice reported he could drive for approximately one hour without stopping to walk around (AR. 338). Bice reported to Mr. Albrecht that Bice could sit for half an hour, stand still for ten to fifteen minutes, do "dynamic standing" for two to three hours, and walk "maybe a mile" (AR. 337). Bice exhibited no signs of discomfort during the intake interview process or spinal function sort test (AR. 339). Mr. Albrecht assessed Bice's perceptions of his pain and the reliability of Bice's reported pain levels with activity he was actually capable of doing (AR. 345). Mr. Albrecht concluded that "Bice presented with 6 of 7 inappropriate (anatomically unreasonable) responses. This is suggestive of inappropriate illness behavior" (AR. 345). With regard to pain scale testing for reliability and consistency of Bice's subjective reports, Mr. Albrecht determined the "Visual Analog Pain Scale ratings correlated poorly with Functional Pain Scale ratings" (AR. 345). In relation to the spinal function sort test, Mr. Albrecht noted the "[r]esults of reliability check testing indicated a marginally reliable profile" (AR. 347).

On May 14, 2007, Bice returned to Dr. Follett for follow-up on his spinal cord stimulator (AR. 352). During the visit, Bice denied having any new leg pain (AR. 352). Bice reported he only had pain in his lower back and the stimulator provided him 50% pain relief (AR. 352). Bice stated the stimulator provided full coverage and he denied any need for readjustments (AR. 352). Bice's only complaint was the time (two hours per week) required to recharge the stimulator (AR. 352). Dr. Follett told Bice to follow-up as needed with his office and with Dr. Soares at the Pain Clinic (AR. 352).

On May 4, 2008, the Lexington Volunteer Fire Department ambulance crew transported Bice after he "was found lying on his right side after having fallen from a standing position" (AR. 370). Bice reported "he felt a pop in his mid back and was having

pain and weakness throughout both legs and weakness in his arms" (AR. 370). The Tri-County Area Hospital Emergency Room Report states that Bice "came through the emergency room and shortly after arrival he was not able to move his feet. He had no sensation in his legs" (AR. 373). After some testing, including CT scans showing normal results and no sizeable herniated disks, the report states:

> [Bice] was definitely in psychological distress upon arrival with almost a conversion reaction, or it may have been just the pain was so severe that he was not able to move his legs or feel pain. Later on, his affect was completely normal. He was able to feel pain over the entire body with pinprick sensation and had normal strength of both legs.

(AR. 374). Bice was discharged with a recommendation to continue using his previously prescribed medications and see his primary care doctor, if needed (AR. 374).

**B.   Administrative Hearing**

At the administrative hearing on February 9, 2009, Bice testified on his own behalf. Bice was born on April 12, 1957, and his highest level of education completed was graduating from high school (AR. 396). He has worked only briefly, doing harvest work on a farm in the Spring and Fall of 2008, since the alleged onset date of his disability, March 24, 2006 (AR. 396-397). Bice clarified that the farm work included driving trucks loaded with corn back and forth a few miles from the field to the bin site, and he also did a "little light disking" in the spring (AR. 402-404). Bice said he could stop the truck and get out to walk when he needed to do so (AR. 403). Bice maintains a commercial driver's license (CDL) (AR. 405). Bice earned about $5,000 doing the work, which he continued to do periodically on an as-needed or on-call basis (AR. 403).

Bice testified he had not otherwise worked since March 24, 2006 (AR. 396-397). For his employment, Bice occasionally lifted up to forty or fifty pounds, but not more (AR. 397). Prior to his alleged disability, Bice worked at a manufacturing plant doing toolbar assembly and at an engine manufacturer where he tested cylinder heads (AR. 397). Bice has also worked as a farm hand and driven a feed truck (AR. 397).

Bice had two surgeries, the first, on his back, in 1994, and the second, on his neck, in 2003 (AR. 398). In March 2006, Bice had a lot of pain running down his back and legs,

sometimes all the way to his feet (AR. 398). Bice saw several specialists at the Nebraska Medical Center about his pain (AR. 398). The specialists eventually recommended a stimulator, which sends electronic pulses out to interrupt brain signals to the brain (AR. 399). The simulator was implanted on July 6, 2006 (AR. 399).

Bice testified that since March 2006, his back condition restricted his daily activities to the point he was unable to walk very far, sit, or stand (AR. 399). Specifically, Bice testified he could walk possibly half a block, sit for ten to fifteen minutes, and only stay on his feet for half an hour (AR. 399). Additionally, Bice experiences "a sharp burning pain" in his lower back down to his feet (AR. 399-400). Activity such as walking or riding very far in a vehicle worsens Bice's pain (AR. 400). Bice reclines in a recliner at least four to five times a day for approximately one-half hour to an hour, and even more if his pain is particularly bad (AR. 400). He also lays on the floor three to four times a day (AR. 400). In addition to icing his legs to relieve the pain, Bice takes Darvocet, a pain medication that he feels has lost its effectiveness (AR. 400-401). Bice uses a spinal cord stimulator twenty-four hours a day, seven days a week, and has been increasing the intensity of the signal for effectiveness (AR. 401). Because of the stimulator, Bice has to avoid being around certain types of electrical devices such as microwaves, welders, and computers, which may cause the stimulator to short out and give Bice an electrical shock (AR. 401).

Bice spends most of his days doing light housekeeping, like dusting, and reading (AR. 402). Bice testified he loses concentration because of the pain after about half an hour, when he has to get up and move around (AR. 402). Bice testified his back discomfort affects his sleep causing him to sleep only three to four hours a night, with some nights as little as one hour of sleep (AR. 401). Bice no longer does any outside chores (AR. 402). Bice testified he does not climb stairs very well because he has to pause and take only one step at a time (AR. 402). Doctors recommended that Bice refrain from lifting anything over twenty pounds and avoid twisting, squatting, kneeling, and sitting for an extended period of time (AR. 401).

Thomas Dachelet, a vocational expert (VE), also testified at the hearing (AR. 404). The VE asked about Bice's CDL before answering any questions (AR. 405). The ALJ gave his opinion about the skill and exertion levels associated with Bice's past employment, with

some additional clarification volunteered by Bice (AR. 405-407). The ALJ posed hypothetical questions to the VE that included an individual of Bice's age, education and work experience who is capable of light physical exertion as defined in the regulations, but who can never climb ladders, ropes or scaffolds, and who can only occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs (AR. 407). The VE gave the opinion that the hypothetical worker could not perform Bice's past relevant work (AR. 407). The ALJ asked the VE about the hypothetical worker as described above, "Could he perform any other jobs in the national economy?" (AR. 407). The ALJ responded, "I would initially, Your Honor, consider the full sedentary at light at the unskilled level as noted by the Administration" (AR. 407). The ALJ continued to ask whether the hypothetical worker who is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, who can stand and walk only occasionally and can sit only occasionally, could perform other jobs in the national economy (AR. 407-408). The VE answered, that because Bice is only available to be on duty two-thirds of the time, that is less than an eight-hour day, "the world of work as normally found is closed" to him (AR. 408).

## THE ALJ'S DECISION

The ALJ concluded Bice was not disabled under the Act and was not entitled to any disability benefits (AR. 20). The ALJ framed the issue as whether Bice was entitled to a period of disability and disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act (AR. 14). As noted by the ALJ, the Act defines "disability" as an inability to engage in any substantial gainful activity due to physical or mental impairments (AR. 14). 42 U.S.C. § 423(d)(1)(A) (2004); 20 C.F.R. § 404.1505(a) (2006). These impairments must be expected to result in death or must last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met (AR. 14). The ALJ determined Bice meets the insured status requirements (AR. 16).

The ALJ must evaluate a disability claim according to the sequential five-step analysis prescribed by the Social Security regulations. **See** *Goff v. Barnhart*, 421 F.3d 785, 789-90 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)-(f).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff*, 421 F.3d at 790 (citation omitted). More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. **See** 20 C.F.R. § 404.1520(a). If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy. A claimant's residual functional capacity is a medical question.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (internal citations omitted). "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted)).

In this case, the ALJ followed the appropriate sequential analysis. At step one, the ALJ found that Bice had not engaged in any type of substantial gainful work activity since March 24, 2006 (AR. 15-16). At step two, the ALJ found Bice has "degenerative disc disease status post discectomy and fusion" (AR. 16-17). At step three, the ALJ determined that Bice does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart 4, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526) (AR. 17). At step four, the ALJ

determined Bice cannot perform any past relevant work (20 C.F.R. § 404.1565), relying on the testimony of the VE (AR. 19). The ALJ's determination was also based on the claimant's RFC (AR. 17-19). The ALJ found Bice to have an RFC "to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit, or stand and walk, for six hours out of an 8-hour day; and occasionally to balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. He can never climb ladders, ropes, or scaffolds" (AR. 17).

At step five, the ALJ again relied upon the testimony of the VE, stating, "[h]e testified a person of Mr. Bice's age, education, work experience, and [RFC] can perform all sedentary and light unskilled work in the national economy" (AR. 19-20). The ALJ found, pursuant to Social Security Ruling (SSR) 00-4p, such testimony was consistent with the information contained in the Dictionary of Occupational Titles (AR. 20). Accordingly, the ALJ concluded Bice, given his age, education, work experience, and RFC, can adjust successfully to other work that exists in significant numbers in the national economy (AR. 20). Further, because Bice can adjust to other such work, he is not disabled under the Act (AR. 20).

Bice appeals the ALJ's findings on two grounds. First, Bice argues the ALJ committed an error of law by failing to explain how he considered the material inconsistencies and ambiguities in the record evidence, as required by SSR 96-8p. **See** Filing No. 20 - Brief p. 9. Second, Bice argues the ALJ's RFC assessment and hypothetical question to the VE are not supported by substantial evidence in the record. *Id.* The court will address each issue below.

## STANDARD OF REVIEW

A district court is given jurisdiction to review a decision to deny disability benefits according to 42 U.S.C. § 405(g). A district court is to affirm the Commissioner's findings if "supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is defined as less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010); **see also** *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009) (noting "the 'substantial evidence on the record

as a whole' standard requires a more rigorous review of the record than does the 'substantial evidence' standard"). "If substantial evidence supports the decision, then [the court] may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (alteration added). "[I]t is the court's duty to review the disability benefit decision to determine if it is based on legal error." *Nettles v. Schweiker*, 714 F.2d 833, 835-36 (8th Cir. 1983). The court reviews questions of law de novo. **See** *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004). Findings of fact are considered conclusive if supported by substantial evidence on the record as a whole. **See** *Nettles*, 714 F.2d 835; *Renfrow v. Astrue*, 496 F.3d 918, 920 (8th Cir. 2007). Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578 (**quoting** *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (alteration added)).

### DISCUSSION

**A.   The ALJ'S Consideration of Evidence under SSR 96-8p**

Bice argues the ALJ failed to comply with SSR 96-8p when he set out the RFC findings. **See** Filing No. 20 - Brief p. 13. Specifically, Bice contends the ALJ failed "to consider and discuss the findings of the Physical Performance Evaluation performed on April 18, 2007" by Mr. Albrecht. *Id.*; **see also** AR. 332-350. Further, Bice argues the ALJ failed to explain how he considered and resolved the inconsistencies between the findings in the Physical Performance Evaluation and the findings made by state agency physicians. Filing No. 20 - Brief p. 13-14. Bice contends that even if the ALJ discredited Bice's subjective allegations, the April 18, 2007, evaluation provided evidence of objective testing results, which support a disability finding. **See** Filing No. 24 - Reply p. 2-3. The government asserts Bice's argument is without merit because the ALJ did address the April 18, 2007, evaluation and Mr. Albrecht's findings when determining Bice's RFC. **See** Filing No. 23 - Response p. 11.

"Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'"

*Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (**quoting** 20 C.F.R. § 422.408 (1989)). Social Security Rulings are not binding or conclusive on the courts, however, they are entitled to deference to the extent they are consistent with the Social Security Act and regulations. *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998); *Jones v. Barnhart*, 335 F.3d 697, 703-04 (8th Cir. 2003) ("We generally give deference to the agency's rulings on its own regulations."); **see** *Ferguson v. Comm'r of Social Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010).

The purpose of SSR 96-8p is "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC)." SSR 96-8p. The ruling provides:

> 1. Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
> 2. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. . . .
> 3. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
> 4. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. . . .
> 5. RFC is not the least an individual can do despite his or her limitations or restrictions, but the most. . . .

SSR 96-8p at *1.

The narrative discussion requirements of SSR 96-8p state:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

> nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. ***The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.***

SSR 96-8p (footnote omitted) (emphasis added).

In assessing the sufficiency of the ALJ's narrative, the court will evaluate the level of detail included by the ALJ. In this case, the ALJ explained how he determined Bice's RFC beyond just a conclusory statement that it was "based on the medical evidence." Bice argues the narrative is deficient for failure to include additional statements regarding the functional limitation factors, rather than mere references to Bice's credibility. **See** Filing No. 20 - Brief p. 12-13. However, the ALJ noted he made the RFC finding by considering "Bice's symptoms, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (AR. 17). Further, the ALJ evaluated Bice's subjective complaints noting, among other things, that Bice's daily activities were inconsistent with his allegations of disabling symptoms and limitations (AR. 18). Moreover, the ALJ made specific references to the April 18, 2007, evaluation by noting why the evaluation was unreliable (AR. 18). These references show the ALJ did consider the evaluation. The ALJ's statements about the reliability of the evaluation provide an explanation for the ALJ's failure to more fully discuss Bice's demonstrated physical abilities and limitations on April 18, 2007.

By contrast, the ALJ explained the state agency physicians' opinion evidence was consistent with the medical evidence. **See** AR. 19; **see also** SSR 96-6p (permitting the ALJ to rely on opinions of medical consultants if opinions are supported by evidence in case record). Such medical evidence did not include objective findings to support Bice's subjective allegations of pain and limitations or the objective test results contained in the April 18, 2007, evaluation (AR. 18-19). The ALJ explicitly determined the objective medical evidence and state agency physicians' opinions support the RFC finding. The only thing arguably missing from the ALJ's decision is a specific and explicit discussion of why he

17

discredited the limitations described in the April 18, 2007, evaluation, but it is implicit in his opinion that the April 18, 2007, evaluation is based on Bice's subjective allegations and entitled to little, if any, consideration in light of the other medical evidence and opinions. The court finds no error in the ALJ's application of SSR 96-8p in developing Bice's RFC. The narrative is sufficient in its explanation of the inconsistencies in the record with a rationale for the RFC finding.

**B.    The ALJ's RFC Assessment**

Bice argues the ALJ's RFC assessment is not supported by substantial evidence as it was based solely on the opinion of a state agency reviewing physician, Dr. Knosp. **See** Filing No. 20 - Brief p. 14. Specifically, Bice notes Dr. Knosp provided an opinion about Bice's functional capacity in June of 2006. *Id.*; **see** AR. 244-252. By virtue of timing, Dr. Knosp was unable to consider Mr. Albrecht's April 18, 2007, evaluation. **See** Filing No. 20 - Brief p. 14. Additionally, the ALJ "does not specifically draw the conclusion" that he based the RFC on the medical evidence of record and Bice's activities. **See** Filing No. 24 - Reply p. 4. For these reasons, Bice contends the record lacks substantial evidence to support the RFC finding because it is based only on the opinion of a non-examining physician. **See** Filing No. 20 - Brief p. 15. Moreover, the ALJ's hypothetical questions posed to the VE were based on this RFC. Accordingly, Bice argues the VE's opinions do not provide substantial evidence to support the ALJ's disability determination. *Id.* at 16.

"In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include all the claimant's impairments supported by substantial evidence in the record as a whole." *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006). Hypothetical questions posed to a VE are proper if they sufficiently set out all of the impairments accepted by the ALJ as true, and if the questions likewise exclude impairments that the ALJ has reasonably discredited. *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001); **see** *Gragg v. Astrue*, No. 09-3238, 2010 WL 3075713, at *8 (8th Cir. Aug. 9, 2010). An ALJ may exclude from the hypothetical question posed to the VE "any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). "Likewise, [the

Eighth Circuit has] held that an ALJ may omit alleged impairments from a hypothetical question when the record does not support the claimant's contention that [the] impairments significantly restricted [the] ability to perform gainful employment." *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (alterations added).

It is the claimant's burden, rather than the Commissioner's, to prove the claimant's RFC. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The ALJ may base the determination on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); **see** *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

"State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation. Therefore, [ALJs] must consider findings and other opinions of State agency medical . . . consultants . . . as opinion evidence." 20 C.F.R. § 404.1527(f)(2)(i). While "there are circumstances in which relying on a non-treating physician's opinion is proper[,]" generally, "opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Vossen*, 612 F.3d at 1016. An ALJ does not err by considering the opinion of a State agency medical consultant along with the medical evidence as a whole. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007).

The ALJ's RFC finding and hypothetical questions properly included Bice's credible limitations. Although Bice argues the ALJ failed to include an indication that he considered the medical evidence and Bice's work activities, the ALJ specifically stated, "I give great weight to these limitations as they are consistent with the medical evidence," which the ALJ discussed in the context of the limitations (AR. 19). Additionally, the ALJ described Bice's

daily activities by noting, among other things, Bice engaged in some work activity such as working "two months last fall doing harvest work for a farmer" (AR. 18). Additionally, the court's review of the record shows that Dr. Knosp's June 5, 2006, opinion was consistent with the medical evidence as of that date. The later evaluation of Mr. Albrecht was not entitled to significant weight, as discussed above. The ALJ did not err in considering the opinion of Dr. Knosp along with the medical evidence as a whole. The hypothetical posed to the VE in this case included the impairments that the ALJ found to be substantially supported by the record as a whole. Therefore, the VE's testimony constitutes substantial evidence which supports the ALJ's determination that Bice was not disabled.

## CONCLUSION

For the reasons stated above, the court concludes the ALJ's decision, which represents the final decision of the Commissioner of the SSA, does not contain the errors alleged by Bice. Specifically, substantial evidence in the record supports the ALJ's RFC finding after his consideration of Dr. Knosp's opinion and Mr. Albrecht's April 18, 2007, evaluation. Substantial evidence in the record as a whole supports the ALJ's denial of benefits. Accordingly, the Commissioner's decision is affirmed. Reversal or remand is not warranted.

**IT IS ORDERED:**

The Commissioner's decision is affirmed, the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

DATED this 17th day of March, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.